Arthur P. Zapolski (AZ-4885)
1202 North Stiles St.
Linden, New Jersey 07036
(908) 486-8505

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MIDLAND RESOURCES HOLDING LTD.,
BREFFKA AND HEHNKE GmBH & CO. KG,

                    Plaintiffs,

- against -

BELCO RESOURCES, INC., SINOCHEM
JIANGSU CORPORATION (FORMERLY KNOWN
AS SINOCHEM JIANGSU IMPORT & EXPORT
CORPORATION), NANJING HUABIN FOREIGN
TRADE & ECONOMICS CO., LTD.,
DRAGONTRANS SHIPPING LTD. d/b/a
HUABANG INTERNATIONAL, INC.,
SINOTRANS NINGBO INTERNATIONAL
FORWARDING AGENCY CO., LTD.,
JOHN DOE 1-10,

                    Defendants.
------------------------------------------------------------X

ECF CASE

Case No. 08-civ-6428 (RMB)

**VERIFIED COMPLAINT
AND PRAYER FOR
<u>RULE B ATTACHMENT</u>**

Plaintiffs MIDLAND RESOURCES HOLDING LTD. ("Midland") and BREFFKA AND HEHNKE GmBH & CO. KG ("Breffka"), by their attorney, Arthur P. Zapolski, as and for its Complaint against Defendants BELCO RESOURCES, INC. ("Belco"), SINOCHEM JIANGSU CORPORATION (formerly known as SINOCHEM JIANGSU IMPORT & EXPORT CORPORATION) ("Sinochem Jiangsu"), NANJING HUABIN FOREIGN TRADE & ECONOMICS CO., LTD. ("Huabin"), DRAGONTRANS SHIPPING LTD. d/b/a HUABANG INTERNATIONAL, INC. ("Huabang"), SINOTRANS NINGBO INTERNATIONAL FORWARDING AGENCY CO., LTD. ("Sinotrans Ningbo"), and John Doe 1 to 10, alleges upon information and belief, as follows:

## JURISDICTION AND VENUE

1. This is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1333 and 28 U.S.C. § 1331. This Court may exercise supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

2. Venue is proper under 28 U.S.C. §§ 1391 (c) and (d).

## PARTIES

3. At and during all times hereinafter mentioned, Plaintiff Midland was and still is a foreign corporation organized and existing under and by virtue of the laws of the Province of Ontario (Canada), with an office and principal place of business located at 4646 Dufferin Street Toronto, Ontario Canada M3H5S4. Midland, at all times hereinafter mentioned, is a trading and investment-holding organization with interests in steel, shipping, construction, real estate, energy distribution, agriculture.

4. At and during all times hereinafter mentioned, Plaintiff Breffka was and still is a foreign corporation organized and existing under and by virtue of the laws of the Germany, with an office and principal place of business located at Mörsenbroicher Weg 151, 40470 Düsseldorf, Germany. Breffka, at all times hereinafter mentioned, was engaged in the business of insurance agent.

5. Upon information and belief, Defendant Belco was and still is a corporation organized and existing under and by virtue of the laws of North Carolina with an office and principal place of business located at 146 Roundabout Ct., P.O. Box 8164, Rocky Mount, NC 27804. Belco, at all times hereinafter mentioned, was engaged in the business of supplying fertilizers, industrial chemicals, and farm equipment.

6. Upon information and belief, Defendant Sinochem Jiangsu (formerly known as SINOCHEM JIANGSU IMPORT & EXPORT CORPORATION) was and still is a foreign corporation organized and existing under and by virtue of the laws of P.R. China with an office and principal place of business located at 28F Shangmao Century Plaza, 49 Zhongshan South Road, Nanjing 210005, Jiangsu Province, P.R. China. Sinochem Jiangsu, at all times hereinafter mentioned, was engaged in the business of importing and exporting pharmaceutical and chemical products.

7. Upon information and belief, Defendant Huabin was and still is a foreign corporation organized and existing under and by virtue of the laws of P.R. China with an office and principal place of business located at 5-6F, 51W Hankou Road, Nanjing 210024, Jiangsu Province, P.R. China. It has also another address at 8/F Ruihua Building, 315 South Zhongshan Road, Nanjing 210001, Jiangsu Province, P.R. China. Huabin, at all times hereinafter mentioned, is engaged in the business of handling and shipping goods.

8. Upon information and belief, Defendant Huabang was and still is a foreign corporation organized and existing under and by virtue of the laws of P.R. China with an office and principal place of business located at Room B-33, 8F Centre Commercial Building, 54 Dashani Street, Ningbo, Zhejiang Province, P.R. China. Huabang, at all times hereinafter mentioned, is engaged in the business of booking cargo and freight forwarding. It is legally known as Dragontrans Shipping Ltd. and is doing business as "Huabang International, Inc.".

9. Upon information and belief, Defendant Sinotrans Ningbo was and still is a foreign corporation organized and existing under and by virtue of the laws of P.R. China with an office and principal place of business located at 5th Floor Sinotrans Mansion, 69 Jie Fang South

Road, Ningbo, Zhejiang Province, P.R. China.  Sinotrans Ningbo, at all times hereinafter mentioned, is engaged in the business of freight forwarding at Ningbo Port.

10.     Upon information and belief, Defendant(s) John Doe(s) 1 to 10 is an or are entity(ies) residing in P.R. China, in the United States, or abroad, and who are liable under any cause of action herein to Midland and Breffka.

**BACK GROUND FACTS**

11.     Midland purchased 44 cold rolled steel sheets from a Chinese manufacturer located in Ningbo, China, and paid for its transportation by sea from China to Tampa, Florida.

12.     The cargo was loaded in five containers aboard the vessel m/v Zim Savannah at the port of Ningbo under bill of lading ZIMUNGB736935.

13.     The five containers were later transshipped from the m/v Zim Savannah to the m/v Zim Haifa, a vessel operated by Zim Integrated Shipping Services, Ltd. ("Zim").

14.     On or about June 6, 2007, Zim's agent in the United States, Zim American Shipping Services, Ltd., informed Midland that the vessel m/v Zim Haifa had experienced explosions in hold no. 5 and that the vessel had managed to board Panama where it was currently monitored by local authorities and fire fighting experts.

15.     On or about June 11, 2007, Zim's agent informed Midland that the fire aboard the m/v Zim Haifa had been successfully extinguished.  The letter further informed Midland that the containers damaged by fire were discharged at Balboa, among which Midland's container number ZIMU2921235, ZIMU2964495 and ZIMU2784220.  It further indicated that preliminary findings by Zim's surveyor found evidence of heat damage to crates and steel sheets transported on container ZIMUN2921235.

16. The containers were reloaded aboard the m/v Zim Haifa and discharged in Kingston, Jamaica, and subsequently transshipped to other vessels for delivery to Tampa, Florida under bill of lading ZIMUKST56392.

17. Container ZIMUN2921235, which content was trans-loaded into container ZIMU2582255, was outturned in Tampa on July 21, 2007.

18. Plaintiffs were the shippers, consignees, owners, cargo insurers or the authorized representatives in connection with the shipment carried in Container ZIMUN2921235and bring this action on their own behalf and, as agents and trustees, on behalf of and for all interests of parties who may be or become interested in the said shipment as their respective interest may ultimately appear and plaintiffs are entitled to maintain this action.

19. Zim and plaintiff Breffka conducted a joint survey of all the containers.

20. The surveyor for plaintiffs inspected the content of Container ZIMUN2921235 on July 23, 24 and 26, 2007, and found nine (9) packages "with severe damage, i.e. burned, soot stained, discolored and charred packaging as well as malodors".

21. Plaintiffs auctioned the 9 damaged packages at salvage value to mitigate its damages, and reduced its loss to an amount of $68,877.90.

22. Plaintiffs suffered additional financial losses of $34,992.38 which put its total damages due to the fire on the m/v Zim Haifa to an amount of $103,870.28.

23. Based on Zim's action against the defendants commenced before this Court in the matter 07-civ-5861, surveyors determined that the fire was due to the presence of Calcium Hypochlorite, a hazardous product which the defendants shipped, or arranged for transportation in container no. ZIMU1037636 under the Bill of Lading number ZIMUNGB670904.

24. Calcium Hypochlorite is a dangerous cargo. It is classified as a Class 5.1 oxidizer designated as "UN 2880" in the International Maritime Dangerous Goods Code ("IMDG Code") adopted by the United States, China, Belize, Liberia, Panama, Israel and other nations of the United Nations as part of the International Convention for the Safety of Life at Sea ("SOLAS") and in the Hazardous Materials Table of the U.S. Department of Transportation regulations, 49 C.F.R. § 17.101.

25. Calcium Hypochlorite is known to decompose, explode or ignite at a relatively low temperature. Its transportation is forbidden unless it can be stabilized or inhibited by, for example, the use of refrigerated containers, under current U.S. regulations. It must be stowed away from all sources of heat to comply with the IMDG Code, U.S. regulations, and other similar foreign regulations. It must be declared by the shipper as dangerous or hazardous material to the ocean carrier under the terms of the Bill of Lading, international conventions, U.S. and foreign regulations.

26. Defendants declared the content of container ZIMU1037636, which was found to contain Calcium Hypochlorite, as Calcium Chloride under its Bill of Lading number ZIMUNGB670904.

27. Calcium Chloride is a harmless and non flammable material.

28. Defendants knew the nature of the cargo in container ZIMU1037636 but concealed it from Zim.

29. Belco appears as the named and declared shipper on the Bill of Lading number ZIMUNGB670904.

30. The President of Belco admitted to Zim on June 11, 2007 that Belco had placed a purchase order on January 4, 2007 with Sinochem Jiangsu for the supply and shipping of 444

6

drums of Calcium Hypochlorite, the hazardous and dangerous material, and not for Calcium Chloride as described in the Bill of Lading.

31. The purchase order sent to Sinochem Jiangsu indicated that the shipment was "C.I.F. Belize" and provided for "shipping instructions". Those "shipping instructions" required Sinochem Jiangsu to name the shipper on the Bill of Lading as "Belco Resources, Inc." and the consignee as "To Order".

32. Sinochem Jiangsu, a subsidiary of the chemical group Sinochem Corporation, based in Nanjing, China, agreed and accepted to sell Calcium Hypochlorite to Belco.

33. Sinochem Jiangsu arranged for the transportation of the hazardous cargo from China to Belize by hiring Huabin, a local freight forwarder also located in Nanjing.

34. Huabin in turn contracted Huabang in the port of Ningbo, to book the ocean transportation of said hazardous cargo.

35. Huabang then contacted Sinotrans Ningbo which placed the booking of the hazardous cargo with Zim and described it as "calcium chloride".

36. Sinochem Jiangsu, through its agents Huabin, Huabang and Sinotrans, declared the cargo inside container ZIMU1037636 as calcium chloride when it contracted with Zim for its transportation from China to Belize.

37. The defendants provided Zim with a Certification for Safe Transport of chemical Goods related to the content of container ZIMU1037636 and prepared by the Shanghai Research Institute of Chemical Industry Testing Centre which indicated that the cargo tested was not flammable, or have any "hazards identification".

38. A dock receipt also indicates that the cargo sealed inside container ZIMU1037636 was erroneously declared as calcium chloride.

39. Belco placed at least 19 purchase orders of Calcium Hypochlorite with Sinochem Jiangsu since 2004.

40. Sinochem Jiangsu arranged for the transportation of all 19 shipments of Calcium Hypochlorite by hiring Huabin since 2004.

41. Eighteen shipments of Calcium Hypochlorite arranged by Sinochem Jiangsu are inaccurately described, or misrepresented, in their related bills of lading issued by ocean carriers as "CALCIUM CHLORIDE", "CALCIUM DICHLORIDE", "CALCIUM CHLORIDE HIPO DE CAL HTH 70%MIN GRAN (SODIUM PROCESSED)", "CALCIUM CHLORIDE COMPOUND FOR WATER TREATMENT", or "HYPOCHLORITE SALT UN NO:1791 CLASS: 8".

42. Sinochem Jiangsu, through and by its agents and subagents Huabin, Huabang and Sinotrans, inaccurately described, or misrepresented, the nature of the cargo to Zim in order to save money on the cost of transportation of Calcium Hypochlorite which, as a hazardous material, should have been transported in refrigerated containers at a higher rate.

43. The defendants must be held liable, jointly and severally, for their direct, and/or vicarious liability for causing damages to plaintiffs' goods.

**AS FOR A FIRST CAUSE OF ACTION
FOR STRICT LIABILITY UNDER COGSA
AS AGAINST ALL DEFENDANTS**

44. Each and every one of the foregoing allegations is incorporated herein by reference and reasserted as though fully set forth at length.

45. Pursuant to 46 U.S.C. § 1304(6), the shipper of goods of an inflammable, explosive, or dangerous nature, although not in privity of contract with the ocean carrier, is strictly liable to the ocean carrier and cargo owners for all damages and expenses directly or

indirectly arising out or resulting from such shipment when the carrier did not consent with knowledge of its nature and character.

46. The Defendants are responsible for shipping, as principal or agent, or owning the cargo of Calcium Hypochlorite transported under Bill of Lading number ZIMUNGB670904.

47. Calcium Hypochlorite qualifies as a "goods of an inflammable, explosive, or dangerous nature" under COGSA § 1304(6) or similar applicable international conventions.

48. Each one of the defendants knew that container ZIMU1037636 transported Calcium Hypochlorite.

49. Zim and Plaintiffs did not know the nature of the cargo transported in container ZIMU1037636, and did not consent to transport Calcium Hypochlorite for the Defendants.

50. The Calcium Hypochlorite inside container ZIMU1037636 caused the fire aboard the M/V Zim Haifa which damaged Plaintiffs' goods.

51. Each and every one of the Defendants is jointly and severally liable to Plaintiffs for all its damages and expenses directly or indirectly caused by the fire.

**AS FOR A SECOND CAUSE OF ACTION
FOR STRICT PRODUCT LIABILITY
AS AGAINST ALL DEFENDANTS**

52. Each and every one of the foregoing allegations is incorporated herein by reference and reasserted as though fully set forth at length.

53. The Defendants were the owners, manufacturers, shippers, consignees, receivers, and/or buyers of the Calcium Hypochlorite cargo which they delivered to Zim and which was loaded and stowed aboard the m/v Zim Haifa.

54. The Defendants placed the cargo of Calcium Hypochlorite into the stream of commerce without providing any warning of its inherently dangerous nature and without providing for its transportation in a refrigerated container.

55. Calcium Hypochlorite transported without warnings represent an inherent vice which rendered the product defective.

56. As a result of its defect, Calcium Hypochlorite caused a fire which damaged the m/v Zim Haifa and plaintiffs' cargo on or about June 3, 2007.

57. Each Defendants, individually or in concert, is liable to Plaintiffs for the damages caused in the amount of US$103,870.28.

**AS FOR A THIRD CAUSE OF ACTION
FOR NEGLIGENT MISREPRESENTATION
<u>AS AGAINST ALL DEFENDANTS</u>**

58. Each and every one of the foregoing allegations is incorporated herein by reference and reasserted as though fully set forth at length.

59. Defendants failed to disclose to Zim that the goods shipped under Bill of Lading number ZIMUNGB670904 were of a hazardous or dangerous nature.

60. Defendants' description of the particulars on Zim's Bill of Lading contained false and/or misleading information as to the nature of the goods shipped in container ZIMU1037636.

61. Defendants' false and/or misleading representations were material to Zim's decision to accept and transport the shipment.

62. Defendants failed to exercise reasonable care in communicating to Zim the nature of goods to be shipped under Bill of Lading ZIMUNGB670904.

63. Zim relied on the truthfulness and completeness of the information disclosed by the Defendants in the subject Bill of Lading ZIMUNGB670904, the Dock Receipt, and the Certification for Safe Transport and such reliance was justified.

64. Defendants' negligent misrepresentations and omissions to Zim resulted in causing the fire.

65. Plaintiffs suffered damages as a result of the fire.

66. Each and every one of the Defendants is jointly and severally liable to Plaintiffs for the damages caused.

**AS FOR A FOURTH CAUSE OF ACTION
FOR FRAUD
<u>AS AGAINST ALL DEFENDANTS</u>**

67. Each and every one of the foregoing allegations is incorporated herein by reference and reasserted as though fully set forth at length.

68. Defendants made a number of material misrepresentations and/or omissions to Zim upon which it relied and had a right to rely.

69. Defendants intentionally, or with knowledge, misrepresented to Zim the goods as "Calcium Chloride" in order to conceal the real and dangerous nature of the cargo sealed in container ZIMU1077636.

70. Defendants intentionally, or with knowledge, provided Zim with a Certification for Safe Transport confirming that the cargo was non flammable and not dangerous.

71. The Dock Receipt also misrepresented to Zim the true nature of the cargo.

72. Zim reasonably relied on Defendants' representations and documentation by accepting to transport the subject goods.

73. Had the Defendants declared that the goods in container ZIMU1077636 were Calcium Hypochlorite, Zim would not have accepted or transported such goods

74. Each one of the Defendants acted individually, or in concert, in furtherance of the fraud.

75. Upon information and belief, Defendants made each misrepresentation and/or omission described above with knowledge that the misrepresentations and/or omissions were false, or with the intent that Zim would rely on such misrepresentations and/or omissions.

76. Zim was unaware of the falsity of Defendants' representations and/or omissions.

77. As a result of Zim's reliance upon the misrepresentations and omissions alleged herein, the fire broke out aboard the m/v Zim Haifa damaging Plaintiffs' goods.

78. Each and every one of the Defendants is jointly and severally liable to Plaintiffs for the damages caused.

## AS FOR A FIFTH CAUSE OF ACTION FOR NEGLIGENCE AS AGAINST ALL DEFENDANTS

79. Each and every one of the foregoing allegations is incorporated herein by reference and reasserted as though fully set forth at length.

80. Calcium Hypochlorite was unreasonably dangerous when it left Defendants' control.

81. Sinochem Jiangsu, Huabin, Huabang and Sinotrans, acting individually or in concert, were negligent in packing the Calcium Hypochlorite in Container ZIMU1077636.

82. Sinochem Jiangsu, Huabin, Huabang and Sinotrans, acting individually or in concert, were negligent in providing a certification that the cargo was non hazardous and safe for transportation.

83. Sinochem Jiangsu, Huabin, Huabang and Sinotrans, acting individually or in concert, were negligent in failing to request refrigerated or on-deck stowage for Container ZIMU1077636.

84. Sinochem Jiangsu, Huabin, Huabang and Sinotrans, acting individually or in concert, were negligent in providing an accurate description of the nature of the cargo transported under Container ZIMU1077636.

85. Defendants' acts of negligence caused the fire on the m/v Zim Haifa.

86. Defendants' owed a duty of reasonable care which they breached.

87. As a result of Defendants' negligence, Plaintiffs suffered damages.

88. Each and every one of the Defendants is jointly and severally liable to Plaintiffs for the damages caused.

## AS FOR A SIXTH CAUSE OF ACTION FOR PUNITIVE DAMAGES AS AGAINST ALL DEFENDANTS

89. Each and every one of the foregoing allegations is incorporated herein by reference and reasserted as though fully set forth at length.

90. As set forth more fully above, Defendants made a number of material misrepresentations and/or omissions as to the nature of the cargo, either negligently or fraudulently, which caused substantial damages to Plaintiffs' goods.

91.  The lack of declaration of the hazardous cargo to the ocean carrier is a "conduct which has constituted "gross, wanton or willful fraud or other morally culpable conduct" to an extreme degree" and warrants an award of punitive damages of no less than 10 million dollars for each defendant held responsible.

## APPLICATION FOR ISSUANCE OF A RULE B ATTACHMENT

92.  Each and every one of the foregoing allegations is incorporated herein by reference and reasserted as though fully set forth at length.

93.  Each and everyone of the Defendants cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, each and every Defendants have, or will have during the pendency of this action, assets within this District and subjects to the jurisdiction of this Court, held in the hands of garnishees including, but not limited to, HSBC (USA), Bank of America, Wachovia, Citibank, American Express Bank, J.P. Morgan Chase, Bank of New York, Deutsche Bank and/or Standard Chartered Bank, which are believed to be due and owing to the Defendants.

94.  The total amount sought to be attached by Plaintiffs pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims is US$103,870.28, plus interest and costs, representing the estimated damages sustained by Plaintiffs as a result of this incident.

95.  Plaintiffs respectfully seek an Order from this Court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching any assets of each and every one of the Defendants in the amount of US$103,870.28 for each defendant, held by the

aforesaid garnishees for the purpose of obtaining personal jurisdiction over the Defendants, and to secure and/or satisfy the plaintiff's claims as described above.

**WHEREFORE**, Plaintiffs pray:

(a) For a Judgment to be entered in favor of Plaintiffs on each and all of the Causes of Action above;

(b) For a Judgment awarding Plaintiffs damages, as well as punitive damages as authorized by law;

(c) For a Judgment awarding Plaintiffs its reasonable costs and expenses, including attorneys' fees incurred in connection with the prosecution of this action to the extent allowed by law;

(d) For a Judgment awarding Plaintiffs such other and further relief as the Court may deem just and equitable;

(e) That process in due form of law issue against each one of the Defendants, citing each to appear and answer under oath all and singular the matters alleged in the Complaint;

(f) That since each one of the Defendants cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching all tangible or intangible property in whatever form or any other funds held by any garnishee, including, but not limited to, HSBC (USA), Bank of America, Wachovia, Citibank, American Express Bank, J.P. Morgan Chase, Bank of New York, Deutsche Bank, and/or Standard Chartered Bank, which are believed to be due and owing to the Defendants, in

the amount of US$103,870.28 to satisfy and/or secure Plaintiffs' claims, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B to answer the matters alleged in the Complaint;

       (j) That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof.

Dated:  Linden, New Jersey
       July __15__, 2008

                                     **ARTHUR P. ZAPOLSKI, ESQ.**
                                     *Attorney for Plaintiffs*

                                     By:_____
                                        Arthur P. Zapolski (AZ-4885)
                                         1202 North Stiles St.
                                         Linden, New Jersey 07036
                                         (908) 486-8505

## VERIFICATION

Arthur P. Zapolski declares and states that he is an attorney for Plaintiffs in this action, and that the foregoing Verified Complaint is true to his knowledge, except as to matters therein stated on the information and belief and as to those matters, he believes them to be true; that the ground of his belief as to all matters not stated upon knowledge is information furnished to him to by Plaintiffs; that the reason why the Verification is not made by Plaintiffs is that Plaintiffs are corporations whose principal places of business are outside New York County, and that due to the exigent nature of this proceeding it was not possible to obtain a Verification from Plaintiffs; and that he is authorized to so verify.

I declare and state under penalty of perjury that the foregoing is true and correct.

Executed on July  15 , 2008

_____
ARTHUR P. ZAPOLSKI